**In re Peter COHEN, Debtor.**

**Frances FOX, Plaintiff,**

v.

**Peter COHEN, Defendant.**

Bankruptcy No. 84–01360–BKC–SMW.
Adv. No. 84–0583–BKC–SMW–A.

United States Bankruptcy Court,
S.D. Florida.

April 5, 1985.

Barbara L. Phillips, Miami, Fla., for defendant/debtor.

Michael A. Frank, Miami, Fla., for plaintiff.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came on before the Court upon an Amended Complaint Objecting to Discharge of the Debtor and the Court, having reviewed the file, heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses, considered the legal argument of counsel for the parties, and, being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law:

The Court has jurisdiction over this "core" matter, as defined in 28 U.S.C. 157.

Plaintiff objects to the Debtor's discharge under 11 U.S.C. 727(a)(2), (3), (4), and (5).

The facts are largely undisputed. Defendant is an auto mechanic by trade and has an eighth-grade formal education. Prior to his personal bankruptcy, Defendant

owned real property on which he operated a truck repair business, known as T & M AUTO SERVICE, INC. ("T & M"). T & M is also a Chapter 7 Debtor, in proceedings pending in the Southern District of Florida. Defendant is the sole shareholder of T & M.

On or about October 22, 1982, Defendant entered into a somewhat complex business transaction with CARL PLATT, as Trustee. The business deal called for the sale of the property, with a lease back of the property to T & M. As a result of this transaction, Defendant was to receive cash at closing ($57,975.00), and, thereafter, payments on promissory notes ($121,175.00), and "credit units" ($162,000.00).

The Court finds, based upon the testimony presented, that Defendant received payments on account of the sale over a period of time prior to bankruptcy. While the payment checks were made to the Defendant personally, it was Defendant's regular practice to deposit the checks in the business checking account of T & M. From this account, Defendant would pay various corporate and personal obligations, including the debt owed to Plaintiff herein.

In the months following the sale, the business was robbed and vandalized in excess of 21 times. During this period, Defendant was faced with a situation wherein the bank would not immediately clear the checks deposited into the T & M account, and the Defendant began to cash his checks with his son. The cash was then deposited into the T & M account and checks were written on the available funds.

On or about May 2, 1983, a loan was arranged between Plaintiff and Defendant for $25,000.00. The loan was collateralized by Defendant's pledge of 4 promissory notes from third parties that were originally payable to Defendant. Plaintiff admits that $18,750.00 was repaid to her by the Defendant on account of the loan.

Ultimately, a fire occurred at the business premises of T & M which caused the final demise of the business. Thereafter, personal and corporate Chapter 7 Bankruptcies were filed by the Defendant herein and T & M AUTO SERVICE, INC.

The Debtor's Schedules, including the Statement of Financial Affairs, of which the Court has taken judicial notice, provide in part that the income received from the Debtor/Defendant's trade or profession during each of the two calendar years immediately preceding the filing of the Chapter 7 was: $13,200.00 for the calendar year 1982 and reflects no income for the year 1983. The Statement further requires information on income received from other sources during each of these two years, for which the Debtor/Defendant listed income for the year of 1982 only.

Plaintiff alleges several distinct grounds in support of her objection to discharge: (1) that Defendant has failed to explain loss or deficiency of assets to meet his liabilities; (2) that Defendant's Schedules and Statement of Affairs do not fully reflect monies received prior to Bankruptcy; (3) that Defendant has concealed or failed to keep books and records; (4) that Defendant has transferred his assets to insiders; and (5) that Defendant has acted with the intent to defraud, hinder or delay creditors of the estate.

Each of these allegations shall be examined in relationship to the evidence presented to the Court.

Section 727 provides that the Court will grant a discharge to a Chapter 7 debtor unless one or more of the specific grounds for the denial of discharge is proven to exist. The House Report accompanying the Bankruptcy Reform Act has described Section 727 as "the heart of the fresh start provisions of the bankruptcy law." H.R.Rep. No. 595, 95th Cong., 1st Sess. 384 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6340.

This Court observes that the Reform Bankruptcy Code offers to debtors what may well be the most extensive "fresh start" since the seven year release described in the *Old Testament.* Deuteronomy, 15:1 and 2. Traditionally, the debtor's fresh start is one of the primary purposes

of bankruptcy law; consequently, exceptions to discharge must be strictly construed. *Matter of Vickers,* 577 F.2d 683, 687 (10th Cir.1978) citing to *Gleason v. Thaw,* 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915).

■ B.R. 4005 places the burden of proof upon the party objecting to discharge. This burden must be met with evidence that is clear and convincing. "It has always been fundamental that the conduct of mankind is presumed to be upright and those who allege to the contrary have the burden of strict proof as to every allegation." *In Re Ashley,* 5 B.R. 262, 2 C.B. C.2d 949 (Bkrtcy.E.D.Tenn.1980).

■ The evidence must be such that, when considered in light of all the facts, it leads the Court to the conclusion that the debtor has violated the spirit of the bankruptcy laws and should therefore be denied the privilege of eliminating the legal obligation of his debts. Plaintiff has failed to carry the burden of proof in this case.

■ Plaintiff contends under 727(a)(5) that Defendant has failed to explain the loss or deficiency of assets to meet his liabilities. However, the Court finds that the Defendant's explanation of how the land sale payments were received and disbursed, including the partial repayment of Plaintiff's debt, is satisfactory.

■ A satisfactory explanation requires the debtor to demonstrate good faith in the conduct of his affairs and in explaining the loss of assets. 4 *Collier on Bankruptcy,* Section 727.08 (15th ed. 1983), *In Re Shapiro & Ornish,* 37 F.2d 403 (D.C. Tex.1929), aff'd, *Shapiro & Ornish v. Holliday,* 37 F.2d 407 (5th Cir.1930). In the *Shapiro* case, the Court found:

> The word "satisfactorily," ... may mean reasonable, or it may mean that the court, after having heard the excuse, the explanation, has that mental attitude which finds contentment in saying that he believes the explanation—he believes what the (debtors) say with reference to the disappearance or the shortage.... He no longer wonders. He is contented.

This Court adopts the *Shapiro* definition. The standard by which the explanation is measured may then be said to be one of reasonableness or credibility. *In Re Wheeler,* 38 B.R. 842, 846 (E.D.Tenn.1984).

After careful review of the evidence and testimony, the Court finds that it is satisfied with the Defendant's explanation as to the disposition of his assets, and that there should be no denial of discharge under 727(a)(5).

Plaintiff next seeks to block Defendant's discharge under Section 727(a)(4). At issue is whether the Defendant's Schedules and Statement of Affairs fully reflected the monies received from the land sale.

Defendant is an unsophisticated man; he relied upon his accountant of some 20 years to assist him in answering the questions in the Statement of Affairs. The accountant was under the impression that the tax returns of the Defendant were to have been made a part of the Debtor's Schedules, and, in fact, the 1982 tax return does detail the land sale transaction proceeds.

It is well established that a debtor should be granted discharge under Section 727(a)(4) unless there is an *intentional* effort made to defraud. *In Re Schnoll,* 31 B.R. 909, 912 (E.D.Wis.1983); *In Re Kirst,* 37 B.R. 275 (E.D.Wis.1983). The record before this Court is devoid of any evidence which would indicate that errors in Defendant's Schedules were made with a fraudulent intent. As has been enunciated in the past by this Court,

> The basic rule in Bankruptcy Court in the Southern District of Florida is that any false oath must be made intentionally and must hinder the administration of the estate ... The element of fraud required to satisfy 727(a)(4) is established when statements are made "with a calculated disregard for the importance of the documents signed under penalty of perjury ..." *In Re Wasserman,* 33 B.R. 779, 780 (S.D.Fla.1983).

■ The omissions in the Defendant's Schedules do not reach a level of activity this Court would deem bad faith or fraud

upon the Court and creditors of the debtor estate. Plaintiff has *not* shown any intentional design to defraud. The Court does not find that the Debtor's discharge should be denied under 727(a)(4).

The third basis for Plaintiff's objection to discharge is the allegation that the Defendant failed to keep books and records or that the Defendant has concealed his records.

The Court finds that the evidence presented does not prove that the Debtor concealed records.

■■■ On the question of failure to preserve records, Section 727(a)(3) of the Code recognizes that circumstances may occur which would justify such failure. The Court may in its discretion excuse any failure to keep or preserve records given justifiable circumstances. *In Re Kirst*, Supra; *In Re Kinney*, 33 B.R. 594, 9 C.B.C.2d 502 (N.D.OH 1983). In this case, it is unrefuted that robberies, vandalism and a fire occurred at the T & M property where Defendant's personal records had been kept.

In view of the foregoing circumstances, the Court does not believe that Plaintiff has met her burden of proof to warrant denial of discharge under 727(a)(3).

In the next allegation of Plaintiff's Complaint, it is alleged that Defendant transferred his assets to family members or corporations controlled by relatives.

■■■ The Court finds the fact that the Debtor's son cashed checks does not rise to the level of proof required under Rule 4005 to impute a fraudulent intent by the Defendant.

Section 727(a)(2) provides in part that the act complained of must be done with the *intent* to hinder, delay or defraud a creditor or officer of the estate. "This intent must be an actual fraudulent intent as distinguished from constructive intent." *Colliers*, 15th Ed., Section 727.02.

The Court is satisfied with the Debtor's explanation as to why the practice of check cashing was used. It is reasonable to find that, in months preceding the Bankruptcy, the bank with whom the Defendant did business would hold checks for clearance, and that the Defendant was reluctant to issue checks against uncollected funds— hence the check cashing practice. Plaintiff has failed to prove the requisite intent and has therefore not proven all elements necessary to prevail under 727(a)(2).

Finally, Plaintiff has claimed that, under 727(a)(2), Defendant acted with the intent to defraud, hinder or delay Plaintiff, by failing to remit to Plaintiff monies received by Defendant from third parties.

After careful review of the evidence, the Court finds that Defendant used the proceeds from the land sale to pay business expenses, including periodic payments on his obligation to Plaintiff.

The Court further finds that there was no assignment of these notes to the Plaintiff, and that the agreement between Plaintiff and Defendant did not preclude Defendant from receiving payments on the third party notes.

■■■ In order to succeed in her efforts to prevent the granting of discharge, Plaintiff must prove that "... the transfer of the Debtor's property (has) been done with the intention to hinder, delay, or defraud a creditor or creditors." *In Re Crane, Jr.*, 7 B.R. 859, 7 B.C.D. 36, 37 (N.D.Ala.1980). Based on the foregoing, the Court finds that no misrepresentations were made and there is no proof that the Debtor acted with the intention of transferring, removing, destroying or concealing his property.

The Court, upon review of the testimony of the witnesses and argument presented by respective counsel, and examination of the documentary evidence, finds that the Plaintiff has not presented clear, cogent and convincing evidence that this Debtor has conducted himself in such a manner as to warrant denial of a discharge under 727(a)(2), (3), (4) or (5).

The denial of a discharge of a debtor is not a step to be taken lightly and is not justified here.

This Memorandum shall constitute Findings of Fact and Conclusions of Law. As is required by B.R. 9021, a Final Judgment pursuant to these Findings and Conclusions is being entered this date.