In re RANDALL'S ISLAND FAMILY GOLF CENTERS, INC., et al., Debtors.

Family Golf Centers, Inc., Plaintiff,

v.

Acushnet Company and Fortune Brands, Inc.

Nos. 00–41065 to 00–41101, 00–41103 to 00–41196(SMB). Adversary No. 02–3147.

United States Bankruptcy Court, S.D. New York.

Feb. 3, 2003.

---

Golenbock, Eiseman, Assor, Bell & Peskoe, Jonathan L. Flaxer, Jacqueline G. Veit, Sydney R. Smith, of Counsel, New York City, for Plaintiff.

Epstein, Becker & Green, P.C., Robert D. Goldstein, of Counsel, New York City, for Defendants.

## MEMORANDUM DECISION DENYING MOTION TO DISMISS COMPLAINT

STUART M. BERNSTEIN, Chief Judge.

After an earlier action was dismissed for procedural reasons at the defendants' urging, the plaintiff immediately refiled this adversary proceeding curing the infirmity. The defendants have now moved to dismiss this lawsuit pursuant to FED. R. CIV. P. 12(b)(6), contending that the claims are time-barred. For the reasons that follow, the motion is denied.

## FACTS

The plaintiff is one of a family of debtors formerly engaged in the business of owning and operating golf facilities, ice rinks and family entertainment centers. (*Complaint*, dated Sept. 30, 2002 (the "*Complaint*"), ¶ 5.) The defendant, Acushnet Company ("Acushnet"), sells golf equipment and apparel through its Titleist and Footjoy divisions, and is a subsidiary of the defendant, Fortune Brands, Inc. ("Fortune Brands.") (*Id.* ¶ 7.) The debtors filed their chapter 11 petitions on May 4, 2000, (*id.* ¶ 6), and the two year period within which the debtor could commence avoidance actions, *see* 11 U.S.C. § 546(a)(1)(A), was due to expire on May 3, 2002.

Four days before the deadline, on April 29, 2002, the plaintiff commenced a single adversary proceeding (Adv.Pro. no. 02–2278) against over eighty defendants to recover unrelated preferences (the "First Action"). *Acushnet* and *Fortune Brands* were among the defendants in the First Action, and the plaintiff alleged that they had received preferences aggregating $584,601.97. (*Complaint* ¶ 12.)

On June 4, 2002, Acushnet and Fortune Brands moved to dismiss the claims asserted against them in the First Action on four grounds: (1) the Complaint did not contain the names of all of the plaintiffs, *see* FED. R. CIV. P. 10(a); (2) it did not contain a short and plain statement of the claim showing that the pleader was entitled to relief, *see* FED. R. CIV. P. 8(a); (3) it

did not contain separate counts for separate claims, *see* Fed. R. Civ. P. 10(b); and (4) it improperly joined parties in violation of Fed. R. Civ. P. 20(a).

I heard oral argument and granted the motion to dismiss without prejudice, (*Complaint* ¶ 16), noting on the record that the plaintiff must renew the claim in a separate adversary proceeding. Neither Acushnet nor Fortune Brands protested the terms of the dismissal. Acushnet and Fortune Brands subsequently settled a proposed order, which I signed on September 20, 2002, and the clerk entered on September 26th. (Adv. Pro. no. 02–2278, ECF Doc. no. 164.) Consistent with my ruling, the order provided for a dismissal without prejudice.

Five days later, on October 1, 2002, the plaintiff commenced this adversary proceeding against Acushnet and Fortune Brands to recover the same transfers sought in the First Action. The defendants have moved to dismiss, but do not challenge the legal sufficiency of the preference allegations. Instead, they contend that this adversary proceeding was commenced after the statute of limitations had expired. The plaintiff has responded that under the doctrine of "equitable tolling," the statute of limitations stopped running, and permitted it to file this adversary proceeding.

## DISCUSSION

■ "Equitable tolling is a doctrine that permits courts to extend a statute of limitations on a case-by-case basis to prevent inequity." *Warren v. Garvin,* 219 F.3d 111, 113 (2d Cir.2000). It has been allowed in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading within the period of limitations, or has been induced or tricked by his adversary into permitting the deadline to pass. *Young v. United*

*States,* 535 U.S. 43, 122 S.Ct. 1036, 1041, 152 L.Ed.2d 79 (2002); *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). While federal courts have typically extended equitable relief only sparingly, *id.,* they have not hesitated to do so when the circumstances call for it.

The seminal case of *Burnett v. New York Cent. R.R. Co.,* 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965), exemplifies the application of equitable tolling to a situation involving a defective pleading. There, Burnett commenced a timely action under the Federal Employers' Liability Act ("FELA") in Ohio state court. *Id.* at 424–25, 85 S.Ct. 1050. The state court action was dismissed for improper venue, and Burnett brought an identical action in federal district court eight days later. *Id.* at 425, 85 S.Ct. 1050. By then, the statute of limitations had run on the FELA claim. *Id.* The district court dismissed the action, and the Court of Appeals affirmed, paving the way for Supreme Court review. *Id.* at 425–26, 85 S.Ct. 1050.

■ The Supreme Court reversed, holding that the statute of limitations had been equitably tolled. The Court observed that the basic inquiry was whether the "congressional purpose is effectuated by tolling the statute of limitations in given circumstances." *Id.* at 427, 85 S.Ct. 1050. This requires an examination of the purposes and policies underlying the statute of limitations, the law itself, and the remedial scheme developed by Congress for the enforcement of the rights created by that law. *Id.*

■ Equitable tolling is a counterweight to the policies that underlie a statute of limitations. Statutes of limitations are primarily designed to ensure fairness by preventing the revival of stale claims after the evidence has been lost and the

witnesses' memories have faded. *Id.* at 428, 85 S.Ct. 1050. "This policy of repose, designed to protect defendants, is frequently outweighed, however, where the interests of justice require vindication of the plaintiff's rights." *Id.* These competing considerations favor tolling where the plaintiff has not slept on his rights, and commences a timely state court action in a court of competent jurisdiction, and the particular defect in the complaint is waivable and frequently waived. *Id.* at 429, 85 S.Ct. 1050. In those circumstances, the defendant "could not have relied upon the policy of repose embodied in the limitation statute, for it was aware that [the plaintiff] was actively pursuing his ... remedy," as evidenced by the defendant's motion in state court to dismiss for improper venue. *Id.* at 429–30, 85 S.Ct. 1050.

In addition, both federal and state law view improper venue as the type of defect that does not require dismissal. Both state and federal courts are authorized to transfer an improperly venued case to the proper forum rather than dismiss the action. *See id.* at 430–32, 85 S.Ct. 1050. This, according to the Supreme Court, indicated that Congress did not intend the statute of limitations to bar timely FELA actions brought in a state court of competent jurisdiction and later dismissed for improper venue. *Id.* at 432, 85 S.Ct. 1050.

Accordingly, the Court concluded, equitable tolling applied to preserve the timeliness of Burnett's second action. He brought his FELA action in a state court of competent jurisdiction, and served process. His first action was dismissed for improper venue and he then commenced a second, federal court action before the time had expired to appeal from the dismissal order. *Id.* at 436, 85 S.Ct. 1050. Following *Burnett's* lead, other courts have applied equitable tolling in a variety of situations where the plaintiff filed a defective pleading before the expiration of the statute of limitations. *See, e.g., Clymore v. United States,* 217 F.3d 370, 375–76 (5th Cir.2000)(plaintiff timely filed action in the wrong venue and promptly refiled it in the correct venue after the statute of limitations had run); *Custom Companies v. Official Committee of Unsecured Creditors,* No. 00 Civ. 1161, 2000 WL 765090 at *2 (N.D. Ill. June 12, 2000)(creditors' committee sued to recover a preference prior to confirmation of the plan that granted it standing to pursue the claim, and the plan was not confirmed until after expiration of the period of limitations); *Timbol v. Commercial Bank of Kuwait,* No. 99 Civ. 1891, 2000 WL 282886 at *3 (S.D.N.Y. March 15, 2000)(papers were timely submitted but due to clerical errors had to be resubmitted after the statute of limitations had expired).

The Supreme Court recently addressed equitable tolling in bankruptcy in *Young v. United States,* 535 U.S. 43, 122 S.Ct. 1036, 152 L.Ed.2d 79 (2002). The case concerned whether the three year "look back" period under 11 U.S.C. § 507(a)(8)(A)(i), relating to priority tax claims, was tolled during the debtors' previous bankruptcy case. The Court remarked that "limitations periods are customarily subject to 'equitable tolling' unless tolling would be inconsistent with the text of the relevant statute." *Id.,* 122 S.Ct. at 1040(internal citation omitted). Congress is presumed to enact limitations periods in light of this background principle, and this "is doubly true when it is enacting limitations periods to be applied by bankruptcy courts, which are courts of equity and 'appl[y] the principles and rules of equity jurisprudence.'" *Id.,* 122 S.Ct. at 1040–41 (internal citation omitted). Moreover, equitable tolling is not limited to situations involving defective

pleadings or the adversary's misconduct, and may be appropriate in other situations. *Id.*, 122 S.Ct. at 1041.

■ It is well-settled that equitable tolling may be applied, in appropriate circumstances, to toll the statute of limitations imposed under 11 U.S.C. § 546(a). *Ernst & Young v. Matsumoto (In re United Ins. Mgmt., Inc.)*, 14 F.3d 1380, 1385 (9th Cir.1994)("Equitable tolling is not 'fundamentally inconsistent' with § 546, which has no tolling provision itself and does not contain a distinct period of repose."). The legislative history to the 1994 amendments to § 546(a)(1) recognizes that equitable tolling applies in cases of fraud, H.R.Rep. No. 103–835, at 23 (1994), U.S.Code Cong. & Admin.News 1994, at 3340, but its application has not been limited to fraud, and has been applied to situations where, despite the exercise of due diligence, the trustee has not been able to file a timely proceeding. *Custom Companies v. Official Committee of Unsecured Creditors*, 2000 WL 765090 at *2 (period of limitations under 11 U.S.C. § 546(a) subject to equitable tolling where creditors committee filed timely preference action, but did not acquire standing until plan was confirmed after the statutory period had run); *see In re United Ins. Mgmt., Inc.*, 14 F.3d at 1386 (trustee's failure to perform his statutory duties nullifies his ability to invoke the doctrine of equitable tolling); 5 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 546.02[3], at 546–17 to 546–18 (15th rev. ed.2002). Moreover, the Supreme Court aptly counseled in *Young* that equitable tolling is consistent with the fundamental goals of bankruptcy law, and is not necessarily limited to a particular set of facts. *Young*, 122 S.Ct. at 1040–41.

■ The present situation fits squarely within the defective pleading paradigm addressed in *Burnett.* First, the considerations supporting equitable tolling outweigh the purposes of the statute of limitations; the plaintiff did not sit on its rights. It commenced a timely preference action against the defendants in a court of competent jurisdiction, and served them with process. The defendants appeared in the First Action, and successfully moved to dismiss the complaint. Five days later, the plaintiff filed this adversary proceeding. The defendants knew that the plaintiff intended to pursue the claims, and have not been prejudiced by the need to defend this adversary proceeding instead of the First Action.

Second, the defect in the *Complaint* was not a fatal one. The First Action joined the defendants with over eighty other defendants in an eighty-six page, 667 paragraph complaint. The joinder of so many defendants was improper under FED. R. CIV. P. 20(a)[1]. Although all of the claims shared the common question of the plaintiff's insolvency, each of the transfers alleged in the complaint arose out of different transactions or occurrences. *Cf. Pereira v. Hong Kong & Shanghai Banking Corp. (In re Kam Kuo Seafood Corp.)*, 67 B.R. 304, 308 (Bankr.S.D.N.Y.1986)(additional preference claims based on isolated transactions did not relate back to original complaint). Rule 21 of the Federal Rules of Civil Procedure expressly recognizes, however, that a court should not dismiss an action based upon improper joinder. Instead, it may sever the improperly joined party and allow the plain-

---

1. Rule 20(a) states in pertinent part:

All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action.

tiff to proceed against the severed party separately.[2]

This is essentially what occurred here. Dismissing Acushnet and Fortune Brands from the First Action without prejudice was effectively a severance under Rule 21 that granted the plaintiff the right to file a new, separate action. Moreover, since the statute of limitations had already run, the dismissal without prejudice implied that the new complaint would relate back to the date of the original complaint. *See Graziose v. American Home Prods. Corp.*, 202 F.R.D. 638, 643 (D.Nev.2001)(claims severed under Rule 20(a) with leave to file a new complaint will relate back to the date of the original complaint); *McClelland v. Azrilyan*, 31 F.Supp.2d 707, 712 (W.D.Mo. 1998)(claims severed under Rule 21 and dismissed without prejudice against severed defendant will relate back provided that the plaintiff files a new case within twenty days and pays the filing fee). Like improper venue, the procedural defect of misjoinder is not critical, and carries no greater penalty than the payment of an additional filing fee.

Finally, the defendants' motion is a bit insincere. They moved to dismiss the First Action after the statute of limitations had already run. They did not ask for a dismissal with prejudice, or argue that the dismissal would or should prevent the plaintiff from refiling the same claim without the procedural defect. They did not contest the dismissal without prejudice, seek reargument or appeal from the "without prejudice" aspect of the dismissal order. In fact, the defendants drafted and submitted the order that the Court signed, dismissing the claims without prejudice. Under the circumstances, the dismissal without prejudice coupled with the direction to file a separate action could mean only one thing: if the plaintiff filed a new action, the second action would be timely. The defendants' current motion is a collateral attack on the earlier dismissal order.

Accordingly, the motion to dismiss is denied. Settle order on notice.

---

**2.** Rule 21 states:

Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.